Filed 3/30/26  P. v. Vargas-Alvarez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JOSE VARGAS-ALVAREZ,<br><br>      Defendant and Appellant. | H052903<br>(Santa Clara County<br> Super. Ct. No. 211412) |

A jury convicted defendant Jose Vargas-Alvarez in 2017 of various offenses related to his actions in a drug trafficking operation he directed.  The trial court sentenced Vargas-Alvarez to a total prison term of 48 years eight months.

In 2024, the trial court vacated Vargas-Alvarez's conviction on one count in response to Vargas-Alvarez's petition for a writ of habeas corpus, and it ordered him resentenced.  At resentencing, the court declined to dismiss sentencing enhancements under Penal Code section 1385,[1] finding that dismissing the enhancements would endanger public safety.  The court resentenced Vargas-Alvarez to an aggregate term of 37 years.

Vargas-Alvarez appeals, contending the resentencing court abused its discretion when it declined to dismiss enhancements under section 1385.  He asserts the court applied an incorrect legal standard by focusing on the danger Vargas-Alvarez posed to public safety at the time of resentencing, rather than the danger to public safety at the

_____

[1] Unspecified statutory references are to the Penal Code.

time of his release were the court to dismiss one or more enhancements. We will affirm the judgment for the reasons stated below.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

In 2006, the federal Drug Enforcement Agency began investigating a drug trafficking operation Vargas-Alvarez headed. Vargas-Alvarez's role included hiring people to manage "stash houses" and transport drugs.

Vargas-Alvarez and others developed a plan to kidnap people they believed responsible for stealing drugs and money from them. Vargas-Alvarez and others kidnapped one of these people and held him for four days, during which time he was bound, beaten, and threatened with additional physical harm.

Law enforcement then executed search warrants at multiple locations. At one location, officers found 42 one-kilogram bundles of suspected cocaine, $618,328 bundled in heat-sealed wrap plus another $152,315 in loose currency, a ledger and a money counter, a .45-caliber handgun, magazines and ammunition, and an "Intratec" handgun with a silencer, among other items. In the location's garage, officers found hidden compartments in three vehicles, including one with crystal methamphetamine and 43 kilograms of suspected cocaine.

A jury convicted Vargas-Alvarez in 2017 of the following charges: two counts of conspiracy to traffic cocaine (§ 182, subd. (a); Health & Saf. Code, § 11352; counts 1 and 8); kidnapping between counties (§ 207, subd. (a); count 3); possession of cocaine for sale (Health & Saf. Code, § 11351; count 10); possession of methamphetamine for sale (Health & Saf. Code, § 11378, count 11); possessing a silencer (former § 12520; count 12); possession of more than $100,000 for the purchase of drugs (Health & Saf.

---

[2] This factual background is adopted from this court's opinion in Vargas-Alvarez's appeal from the judgment at trial and from the probation officer's presentence report, both of which are contained in the appellate record in the instant case. A more extended summary of the evidence at trial can be found in this court's prior opinion. (*People v. Vargas-Alvarez et al.* (May 25, 2022, H045450) [nonpub. opn.].)

Code, § 11370.6; count 14); three counts of possessing false compartments for the purpose of smuggling drugs (Health & Saf. Code, § 11366.8, subd. (a); counts 15-17); and possessing an assault weapon (former § 12280, subd. (b); count 28).  The jury found true weight enhancements (Health & Saf. Code, § 11370.4, subd. (a)) for counts 1, 8, and 10, and found true firearm enhancements (§ 12022, subd. (c)) for counts 1, 10, and 11.

The trial court sentenced Vargas-Alvarez to an aggregate term of 48 years eight months, consisting of:  (1) 35 years on count 1 (the upper term of five years, plus five years for the firearm enhancement and 25 years for the weight enhancement); (2) a consecutive term of one year eight months on count 3 (one-third the middle term); (3) a consecutive term of nine years eight months on count 8 (one-third the middle term plus one-third of 25 years for the weight enhancement); (4) 34 years for count 10 and its enhancements, stayed pursuant to section 654; (5) a concurrent upper term of three years on count 11, with the punishment for the firearm enhancement stricken pursuant to section 1385, subdivision (c)(1); (6) a consecutive term of eight months on count 12 (one-third the middle term); (7) a consecutive term of one year on count 14 (one-third the middle term); (8) a consecutive term of eight months on count 15 (one-third the middle term); (9) a concurrent upper term of three years on each of counts 16 and 17; and (10) the upper term of three years on count 28, stayed pursuant to section 654.

Vargas-Alvarez and his codefendants appealed, raising several issues including evidentiary and instructional challenges.  This court rejected the defendants' substantive claims, and affirmed Vargas-Alvarez's judgment with modifications concerning certain fees and assessments.

In 2023, Vargas-Alvarez filed a petition for a writ of habeas corpus that resulted in the trial court vacating his conviction on count 8, vacating the original sentence, and ordering resentencing.

Vargas-Alvarez's memorandum in advance of the resentencing hearing requested various forms of sentencing relief.  His memorandum included a request to dismiss the

3

Health and Safety Code section 11370.4, subdivision (a) and the section 12022, subdivision (c) enhancements associated with counts 1, 10, and 11 under section 1385, or alternatively to impose lesser enhancements. His memorandum asserted that the presence of mitigating factors justified dismissing the enhancements unless the court found dismissal would endanger public safety. Vargas-Alvarez asserted he "has learned to understand his wrongdoing, has developed empathy for his victims, and is deeply remorseful, and is no longer a danger to the community." The memorandum attached numerous documents including letters from family members and friends, education records, program completion certificates, a psychological evaluation, and transcripts from Vargas-Alvarez's trial.

The prosecution's sentencing brief recommended an aggregate sentence of 37 years. The prosecution opposed dismissing any enhancements under section 1385, arguing that dismissing one or more enhancements would endanger public safety based on the nature of Vargas-Alvarez's offenses.

At the resentencing hearing, defense counsel argued that Vargas-Alvarez "has changed," asserting: "He's worked really hard to make sure he's no longer a person who would commit those same errors." Defense counsel argued that the materials provided with the defense sentencing memo "all make clear that he is reformed and no longer a danger to society." Counsel argued that three mitigating circumstances listed in section 1385 were present, and asserted: "[T]he jurisprudence teaches that the Court must sentence him in light of the man he is today, not the man he was a decade and a half ago when he was first arrested. And, moreover, the question under [section] 1385 is forward looking, whether it would be a danger to society to shorten the sentence that the Court determines to give to" Vargas-Alvarez. Defense counsel outlined matters such as Vargas-Alvarez's completion of rehabilitative programs and his educational progress, and concluded by arguing that Vargas-Alvarez had "aged out of the demographic where

4

people are most likely to commit crimes" and thus dismissing enhancements would no longer endanger public safety.

The trial court stated it had "a very good memory of this case," and it was "glad" Vargas-Alvarez "is taking advantage of the resources available to him in custody." The court then stated: "But I do think, without any hesitation in my mind, this is a person that will continue to endanger public safety based on the facts of this case," before summarizing some facts of Vargas-Alvarez's offenses. The court then stated: "I respect what [Vargas-Alvarez] has done. I very much appreciate and read every letter. But I think that the facts of this case . . . tell us that this is an exceptionally serious case and that releasing a person who was in charge of that would continue to endanger public safety." The court then resentenced Vargas-Alvarez to an aggregate term of 37 years, including four years for count 1's firearm enhancement and 25 years for count 1's weight enhancement. As to the remaining enhancements, the court stayed the sentence for count 10 and its enhancements and it struck the punishment for count 11's firearm enhancement, consistent with its action at the original sentencing hearing.

Vargas-Alvarez timely appealed.

## II. DISCUSSION

Vargas-Alvarez asserts the resentencing court abused its discretion by applying an improper legal standard when deciding whether dismissing the enhancements would endanger public safety. While he argued to the trial court that the enhancements for counts 1, 10, and 11 should be dismissed, his briefing to this court focuses on count 1's firearm enhancement, which increased his sentence by four years. The Attorney General argues nothing in the resentencing court's statements demonstrates it applied an incorrect standard in determining that dismissing the enhancements would endanger public safety. We discern no abuse of discretion in the trial court's decision not to dismiss any enhancements.

5

**A. *Legal Principles***

"The judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." (§ 1385, subd. (a).) As to sentence enhancements, under section 1385 "a court has authority to strike the additional punishment or to strike the enhancement altogether." (*People v. Barboza* (2021) 68 Cal.App.5th 955, 965.)

Senate Bill No. 81 amended section 1385 effective January 1, 2022 "to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.) Subdivision (c)(1) of section 1385 states: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Under section 1385, subdivision (c)(2): "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

We review a determination under section 1385, subdivision (c)(2) that dismissal of an enhancement would endanger public safety under the abuse of discretion standard. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*).) "The abuse of discretion standard is highly deferential. When, ' "as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary,

6

capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' [Citations.]" (*Ibid.*) " '[A]n abuse of discretion arises if the trial court based its decision on impermissible factors . . . or on an incorrect legal standard.' [Citations.]" (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225 (*Gonzalez*).)

### B. *Analysis*

At resentencing, Vargas-Alvarez asserted that mitigating circumstances listed in section 1385, subdivision (c)(2) were present, and the prosecutor did not contend otherwise.[3] Thus, under section 1385, subdivision (c)(2), the presence of such mitigating circumstances "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (See also *People v. Walker* (2024) 16 Cal.5th 1024, 1029 ["if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' [Citation.]"].)

Vargas-Alvarez argues "the court was required to evaluate public safety in light of when [he] would be eligible for release, not simply whether he remained dangerous in the abstract." He cites evidence of his rehabilitative efforts to assert that had the resentencing court focused on the danger to public safety at the time he would be eligible for release, it would have dismissed the enhancements. Therefore, he argues, the trial court applied an erroneous legal standard, constituting an abuse of discretion.

---

[3] Vargas-Alvarez asserted at resentencing that three mitigating circumstances listed in section 1385, subdivision (c)(2) were present: multiple enhancements were alleged in a single case (*id.*, subd. (c)(2)(B)); application of an enhancement could result in a sentence of over 20 years (*id.*, subd. (c)(2)(C)); and a firearm used in the current offense was inoperable or unloaded (*id.*, subd. (c)(2)(I)).)

Vargas-Alvarez correctly asserts that when determining whether dismissing an enhancement would endanger public safety, a court must consider the defendant's dangerousness at the time of release if the court were to dismiss one or more enhancements. "Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence. A currently dangerous defendant who will be released from prison within a short timeframe might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly." (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 228.)

The resentencing court did not expressly limit its analysis to Vargas-Alvarez's current dangerousness. The court stated it recognized Vargas-Alvarez's rehabilitative efforts in prison, and it heard defense counsel's argument that "the question under [section] 1385 is forward looking" and that the analysis should focus on whether Vargas-Alvarez would present a danger to society if his sentence was reduced. The court then stated that "without any hesitation in [its] mind," Vargas-Alvarez "is a person that *will continue to endanger public safety* based on the facts of this case . . . . A multi-million dollar, hundreds-of-kilogram cocaine nationwide operation where they kidnapped and beat an innocent man because someone had stole[n] money from Mr. Alvarez . . . . I think that the facts of this case . . . tell us that this is an exceptionally serious case and that *releasing a person who was in charge of that would continue to endanger public safety*." (Italics added.) The court's statements indicate that it assessed Vargas-Alvarez as he presented at the resentencing hearing, and the danger he would pose to public safety in the future if released before the completion of a sentence that included the enhancements.

Further, Vargas-Alvarez points to nothing in the resentencing court's statements demonstrating it failed to consider his dangerousness at the time of potential release if one or more enhancements were dismissed. Nor was the court required to expressly state it considered future dangerousness, and we presume it considered the appropriate criteria in its analysis. (See *People v. Brugman* (2021) 62 Cal.App.5th 608, 637 [trial court is not required to state reasons for declining to exercise its discretion under section 1385, and is presumed to have considered relevant factors in the absence of an affirmative record to the contrary].)

We distinguish the court's statements from those considered in *Gonzalez*, where the Court of Appeal concluded the trial court applied an erroneous legal standard in declining to dismiss an enhancement and thus abused its discretion. In *Gonzalez*, the trial court expressly stated that its analysis was "forward looking from today, not forward looking from 50 years from now" when the defendant might be released, and that its focus was on whether the defendant "currently at the time of sentencing represent[s] a danger to society." (*Gonzalez*, *supra*, 103 Cal.App.5th at pp. 224, 223.) Here, the resentencing court made no such affirmative statements indicating a "singular focus on whether the defendant *currently* poses a danger." (*Id.* at p. 228.)

Vargas-Alvarez argues the record supports a finding he was engaged in rehabilitative efforts and demonstrated empathy and remorse, and thus dismissal of the enhancements was appropriate. But applying the deferential standard of review applicable here, we do not perceive the trial court's assessment to be arbitrary, capricious, or patently absurd. (*Mendoza*, *supra*, 88 Cal.App.5th at p. 298.) The resentencing court recognized Vargas-Alvarez's rehabilitative efforts but concluded "without any hesitation" that Vargas-Alvarez would continue to endanger public safety if one or more enhancements were dismissed based on the facts of Vargas-Alvarez's offenses. The resentencing court was permitted to consider the serious nature of Vargas-Alvarez's offenses in determining that dismissing one or more enhancements would endanger

9

public safety in the future. (See *id.* at p. 299 [trial court did not abuse its discretion in concluding that dismissing an enhancement would endanger public safety "[g]iven the court's consideration of the circumstances of the crime and the court's determination that a long sentence was necessary for Mendoza to become rehabilitated after committing such a crime"].)

Vargas-Alvarez has not affirmatively demonstrated that the trial court applied an incorrect legal standard in determining whether to dismiss the enhancements. The resentencing court could reasonably conclude that in light of the seriousness of Vargas-Alvarez's offenses, dismissing one or more enhancements would endanger public safety if he were granted an earlier release date, despite Vargas-Alvarez's rehabilitative efforts. As a result, we determine the trial court did not abuse its discretion when it declined to dismiss the enhancements under section 1385.

### III. DISPOSITION

The judgment is affirmed.

_____
                Greenwood, P. J.


WE CONCUR:




_____
 Danner, J.









_____
 Bromberg, J.





H052903 People v. Vargas-Alvarez